UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

**08-CR-458 (NGG)**

-against-

JOSEPH CADET,

　　　　　　　　　　　　　　　Defendant.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

　　Currently before the court are two motions in limine pertaining to the prosecution of Defendant Joseph Cadet ("Defendant" or "Cadet"). The Government seeks to introduce evidence of uncharged acts by the Defendant. (Gov't First Mot. in Limine (Docket Entry #30) ("Gov't Mot.").) Defendant seeks to preclude this evidence and to preclude the testimony of IRS Agent Frank Stamm ("Agent Stamm"). (Letter as Def's Mot. in Limine To Preclude Evidence from His Trial (Docket Entry #31) ("Def. Mot.").)

　　For the reasons set forth below, both the Government's motion and the Defendant's motion are GRANTED in part and DENIED in part.

**I.　　EVIDENCE OF UNCHARGED ACTS**

　　Defendant Cadet, a tax preparer, is charged with thirty-five counts of aiding and assisting the preparation of false tax returns in violation of 26 U.S.C. § 7206(2). The Government alleges that Defendant secured unwarranted tax refunds for his clients by claiming false or inflated deductions in preparing their tax returns. (See Indictment (Docket Entry #1).) The Government seeks to introduce at trial evidence of Defendant's own personal tax history. It also seeks to

1

present evidence of Defendant's interactions with an undercover agent.  Defendant asks the court to preclude all of this evidence from being introduced at trial.

Rule 404(b) of the Federal Rules of Evidence prohibits the admission of evidence of the accused's "[o]ther crimes, wrongs, or acts" if the evidence is offered to show the accused acted in conformity with the prior bad acts.  Such evidence may be admissible, however, if offered for a non-propensity purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Fed. R. Evid. 404(b); see United States v. Germosen, 139 F.3d 120, 127 (2d Cir. 1998) (noting that uncharged acts evidence can be admitted "for any purpose except to show criminal propensity").  Uncharged acts evidence offered to show knowledge or intent must be "sufficiently similar to the conduct at issue to permit the jury" to draw a reasonable inference of knowledge or intent from the prior act.  United States v. Peterson, 808 F.2d 969, 974 (2d Cir. 1987).  Similarity, and ultimately, the relevancy of the uncharged act evidence is measured by the degree to which "the prior act approaches near identity with the elements" of the charged offense.  United States v. Aminy, 15 F.3d 258, 260 (2d Cir. 1994).

### A. Defendant's Tax History

According to the Government, Defendant did not file a personal tax return for 2002, 2003, 2004, or 2005.  (Gov't Mot. 3.)  Nor did Defendant file returns for his business entities, Cordet Management and Canarsie Capital Group, for 2003, 2004, and 2005.  (Id.)  Additionally, Defendant paid his employees by cash or personal check and did not report their earnings to the IRS.  (Id.)  None of this conduct is charged in the Indictment.  Defendant argues that this evidence is irrelevant and merely serves to cast him in a negative light before the jury, inviting the inference that he was "generally a cheater when it came to taxes."  (Def. Mot. 4.)  The

Government counters that it will use the evidence to prove that Cadet acted willfully in preparing the fraudulent tax returns and to show his intent to defraud the government. (See Gov't Mot. 7.)

The court finds that evidence of Defendant's personal tax history is not admissible. Although the Government has identified a valid non-propensity purpose for offering the tax history evidence, Defendant's failure to file various tax forms is, at best, marginally relevant to the issue of whether Defendant willfully aided in the preparation of fraudulent tax returns. Failing to file one's personal tax forms lacks the requisite "substantial similarity" to filing forms containing false information on behalf of others. Peterson, 808 F.2d at 974. If the evidence instead showed that Defendant had filed his personal tax forms, but had claimed false deductions for himself, the similarity might be sufficient for admissibility. As it stands, however, the only real similarity here is that both involve tax forms. In other words, Defendant's tax history is relevant only to demonstrate that he "engaged in other misconduct with the Internal Revenue Service, thereby showing that [he] has a propensity to disregard tax law." United States v. Reiss, No. CRIM.04-156 RAM/RLE, 2005 WL 2337917, at *3 (D. Minn. June 9, 2005) (holding evidence of untimely tax filings inadmissible under similar prosecution of tax preparer). This is exactly the sort of evidence that Rule 404(b) prevents from being presented to the finder of fact. The minimal probative value of Defendant's tax history on the issue of intent is substantially outweighed by the risk that the jury will infer from it that Defendant is "generally a cheater" when it comes to taxes. (Def. Mot. 4.) Thus, the evidence is inadmissible under Rule 403 in any event. See Fed. R. Evid. 403.

The Government relies heavily on United States v. Bok, 156 F.3d 157 (2d Cir. 1998), to suggest that Defendant's taxpaying record should be admissible to show intent. In Bok, the Second Circuit upheld the trial court's decision to allow the introduction of evidence of

uncharged acts, such as the defendant's failure to file a state personal tax return for a given year. Bok, 156 F.3d at 165-66. But in that case, as in all the others cases cited in it, the defendant was charged with personal tax evasion, and thus his own personal taxpaying history was quite relevant to the issue of willfulness. Id. at 160. Such "near identity with the elements" of the charged offense is lacking here, where the charged offense involves a tax preparer fraudulently preparing tax returns for his clients. Aminy, 15 F.3d at 260. Accordingly, the evidence regarding Defendant's personal tax history is inadmissible at trial.

### B. The Undercover Operation

In April 2006, an undercover IRS agent visited Defendant posing as a taxpayer who needed his tax return prepared. According to the Government, when Defendant initially prepared the agent's return, he informed the agent that the tax liability was more than $3,000 and offered to prepare the return again using "creative financing" for a higher fee. (Gov't Mot. 2.) The second return indicated a refund of over $2,400. (Id.) Defendant's alleged preparation of a false return for the agent is not charged in the Indictment.

The Government seeks to introduce at trial evidence of the undercover agent's interactions with Defendant, including the testimony of the undercover agent, the recording of the meeting between the agent and Defendant, and documents produced as a result of that meeting. They argue that this similar act evidence is admissible to show Defendant's modus operandi, motive, and intent, as well as to corroborate the testimony of other fact witnesses, Defendant's clients. (Gov't Mot. 8-9.) Defendant objects under Rule 404(b) and claims that the evidence is irrelevant and prejudicial. (Def. Mot. 4.)

The court finds that evidence of Defendant's interactions with the undercover agent is admissible. Although this is an uncharged act, the Government offers the evidence for several

4

proper non-propensity purposes, such as demonstrating motive, intent, and corroboration. See Germosen, 139 F.3d at 127. Furthermore, Defendant's alleged preparation of a false tax return for the agent is "sufficiently similar" to the charged conduct to make relevant to Defendant's mental state. See Peterson, 808 F.2d at 974. Both acts involve Defendant's preparation of false returns for others in exchange for a fee, and the Government claims that Defendant's conduct with the agent is identical to his conduct with his other clients. (Gov't Mot. 10.)

This uncharged act is relevant to several issues. The Government claims that Defendant will contest his willfulness as to the charged conduct by arguing that in preparing his clients' false returns, he either relied on inaccurate information provided by his clients or he made a mistake. In light of this defense, Defendant's interaction with the undercover agent is relevant for the purpose of proving knowledge, intent, and absence of mistake. See United States v. Oskowitz, 294 F. Supp. 2d 379, 382 (E.D.N.Y. 2003) (admitting undercover agent evidence against tax preparer for these purposes under similar circumstances). At trial, Defendant will likely challenge the credibility and testimony of his other taxpayer clients whose returns he prepared. Evidence of Defendant's interactions with the agent is admissible to corroborate the testimony of his other clients as to their interactions with Defendant. See id.; United States v. Everett, 825 F.2d 658, 660 (2d Cir. 1987) ("Under Rule 404(b) evidence of 'other crimes' has been consistently held admissible to corroborate crucial prosecution testimony.").

The undercover agent evidence is not admissible, however, for the purpose of demonstrating the Defendant's modus operandi. To be admissible for this purpose, there must be similarities between the "idiosyncratic details" of the charged and uncharged act, giving rise to the inference of a pattern. United States v. Anglin, No. 98-CR-147 (RPP), 1998 WL 252078, at *2 (S.D.N.Y. May 19, 1998). The general similarity claimed by the Government – Defendant's

5

asking for a higher fee in exchange for including false deductions – is not "so unusual and distinctive as to be like a signature." Oskowitz, 294 F. Supp. 2d at 382 (quoting McCormick on Evidence, § 190 (15th ed.)). While this evidence is suggestive of a possible motive, it is not sufficiently particular to establish a modus operandi and is therefore not admissible for that purpose.

Despite the relevance of the undercover agent interactions, Defendant argues that the evidence should be excluded under Rule 403 because its probative value is "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. As discussed above, the evidence is highly probative of a number of disputed issues. Further, the risk of unfair prejudice is quite small. Defendant's interactions with the agent are no more "sensational or disturbing" than the charged offense. United States v. Pitre, 960 F.2d 1112, 1120 (2d Cir. 1992). In fact, the conduct at issue in nearly identical. Thus, the probative value of the evidence is not outweighed by the danger of unfair prejudice, and the evidence of Defendant's interactions with the undercover agent is admissible. In order to prevent any possible prejudice, the court will give a limiting instruction requiring the jury to consider this evidence only for the proper purposes discussed above. The court will instruct the jurors that they may not infer from this evidence that Defendant has the propensity to commit crimes.

## II. TESTIMONY OF AGENT STAMM

The Government has provided notice that it intends to call Agent Stamm as a summary witness and an expert witness in the area of taxation and income tax computation. (Notice of Expert Witness (Docket #29).) Agent Stamm has been with the IRS since 1988 and has been a Grand Jury Agent, assigned to assist in criminal investigations and prosecutions, since 1992. According to the Government, Agent Stamm's function will be to explain to the jury the tax

consequences of the information Defendant put in his clients' tax returns.  Based on the testimony of the government's other fact witnesses as to any false or inflated deductions, Agent Stamm will compute the correct tax due on each witness's return.  He will be called at the end of the Government's case in chief to testify as to the difference between the tax liability reported on each return and the actual tax due to the IRS.  The Government intends for Agent Stamm to prepare summary charts based entirely on the testimony of trial witnesses in order to illustrate his conclusions for the jury.  (Id. at 1-2.)

Defendant objects to this testimony and these charts on the grounds that asking Agent Stamm to evaluate the testimony of other witnesses is improper expert testimony under Rule 702 and Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).  (Def. Mot. 1.)  Defendant also claims that this evidence would impermissibly bolster the government's fact witnesses.  (Id.)

It is not at all unusual for an IRS agent to testify as an "expert summary witness" in cases involving tax crimes.  United States v. Pree, 408 F.3d 855, 869 (7th Cir. 2005); see also United State v. Ratfield, No. 07-13537, 2009 WL 2502105, at *2 n.4 (11th Cir. Aug. 18, 2009) (collecting cases); United States v. Sherry, 100 F.3d 943, 943 (2d Cir. 1996) (describing expert summary witness testimony of IRS agent in prosecution of tax preparer).  An IRS agent may testify as to his tax analysis based on his special expertise and on the facts provided by the testimony of other witnesses.  See United States v. Moore, 997 F.2d 55, 58 (5th Cir. 1993). Defendant's arguments to the contrary misapprehend the role Agent Stamm will play at trial. Agent Stamm will not be permitted to opine on the credibility of other fact witnesses or in any way evaluate their testimony.  Rather, based on the numerical facts provided by those witnesses, he will merely perform tax calculations.  The numbers he uses and assumptions he makes will be subject to cross-examination, as will his calculations.

7

Defendant points to a Second Circuit case that identifies some difficulties that can arise when a case agent who was involved in an investigation is called as an expert witness at trial. See United States v. Dukagjini, 326 F.3d 45, 53 (2d Cir. 2002). However, these concerns are not implicated here as Agent Stamm was not involved as a case agent in Defendant's case. Agent Stamm will be testifying based only on the facts provided by other witnesses at trial, and not based on any personal knowledge of the facts.

Defendant also argues that Agent Stamm's testimony would be irrelevant under Rule 402, since the issues at trial will be whether material mistakes were made in preparing the returns and whether those mistakes were willful. (Def. Mot. 3.) According to Defendant, the exact amount by which taxes were underpaid is irrelevant and thus, recalculating the tax liability of each witness is a matter for the auditors, not for the jury. (Id.) However, as Defendant himself points out, the Government must show material falsehoods in order to obtain a conviction. See 26 U.S.C. § 7206(2). The size of any unwarranted tax refund obtained by Defendant's clients as a result his tax preparation services directly relates to the issue of materiality. Thus, Agent Stamm's testimony regarding the ultimate tax consequences of any false or inflated deductions on Defendant's clients' tax returns is clearly relevant.

Accordingly, the court rejects Defendant's motion to preclude the summary witness and expert witness testimony of Agent Stamm. With respect to any summary charts used by Agent Stamm, the court will issue a limiting instruction to explain that the charts are not themselves substantive evidence.

### III. CONCLUSION

As explained above, the Government's motion is GRANTED as it pertains to admission of evidence of the undercover operation, but DENIED with respect to admission of evidence of

Defendant's tax history.  Defendant's motion is GRANTED as it pertains to preclusion of evidence of Defendant's tax history, but DENIED with respect to preclusion of evidence of the undercover operation and of the testimony of Agent Stamm.

SO ORDERED.

  /s/ Nicholas G. Garaufis    
NICHOLAS G. GARAUFIS  
United States District Judge

Dated: Brooklyn, New York  
      September 11, 2009